IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MARY DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-1051 |
| ) | |
| THE BOARD OF EDUCATION OF ) | |
| PEORIA PUBLIC SCHOOL DISTRICT ) | |
| NO. 150, a body corporate and politic, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF MARY DAVIS IN
SUPPORT OF HER MOTION IN LIMINE**

**I. INTRODUCTION**

In this case Mary Davis ['Davis"] claims that she was the victim of race discrimination in the sense that she was treated differently than similarly situated African Americans. It arises out of actions taken in June of 2010 when the Board of Education of Peoria Public School District No. 150 ["District"] adopted a resolution dismissing Davis from its employ and then serving upon Davis notice of her dismissal and charges alleging 6 acts of misconduct on her part. All of the charges relate to Davis' handling of a student activity fund while she served as the principal of Lindberg Middle School. The charges indicate that the "effective time and date of your dismissal" is the date the District's Board adopted the foregoing resolution.

As was her right, Davis requested a hearing before a disinterested hearing officer pursuant to Section 24-12 of the "School Code" [105 ILCS 5/24-12] to determine whether the District had good cause to terminate her employment. Because of the pendency of the criminal charges relating to her handling of the activity fund, Davis and the District jointly agreed to

postpone the hearing until the conclusion of the criminal proceeding. In February of 2012, twenty months after her dismissal, Davis, pursuant to a negotiated plea agreement, entered a plea of guilty to the misdemeanor offense of attempting to obstruct justice. In exchange sixteen felony charges against Davis were dismissed. In July of 2012 the District amended its disciplinary charges to include as an allegation of misconduct her guilty plea to the misdemeanor.

A hearing was held in August of 2012. Thereafter, the hearing officer's decision was appealed pursuant to the "Administrative Review Law" [735 ILCS 5/3-101 et.al.] initially to the Circuit Court of Peoria County, Illinois ["Circuit Court"] and later to the Illinois Appellate Court for the Third District ["Appellate Court"].

After hearing two days of evidence relating to the District's amended charges, the hearing officer concluded that the District did not have good cause to discharge Davis. Both the Circuit Court and the Appellate Court disagreed relying largely upon Davis' guilty plea.

The District apparently intends to present before the jury evidence and statements related to both the guilty plea and the decisions of the Circuit Court and Appellate Court. Given the issues and claims in this case, Davis submits that such evidence and statements are immaterial. Moreover, even if they were marginally material to any dispute in this case, the risk of jury confusion or unfair prejudice outweighs any relevance they may have.

## II. ARGUMENT

Generally, relevant evidence is admissible at trial unless its probative value is substantially outweighed by the risk of such things as unfair prejudice, confusing the issues or misleading the jury [Rules 402 and 403 of the Federal Rules of Evidence].

Evidence is relevant if:  a) it has a tendency to make a fact more or less probable than it would be without the evidence; and b) the fact is of consequence in determining the case [Rule 405 of the Federal Rules of Evidence].

**A)** **Davis' Guilty Plea.**

*McKennon v. Nashville Banner Publishing Company*, 513 U.S. 352, 130 L.Ed.2d 852 (1995) provides useful guidance to this Court in considering Davis' motion.[1]

The plaintiff in that case was terminated as a result of a workplace reduction in force. After she initiated an age discrimination lawsuit, her employer through discovery came upon evidence of workplace misconduct on the part of the plaintiff which would have warranted her termination.  Based upon that discovery, it informed the plaintiff that because of that conduct she was again terminated and had it earlier known of that misconduct it would have terminated her.

Both the district court and the court of appeals held that because of the plaintiff's misconduct her discharge was sustained and she was entitled to neither backpay nor any other remedy otherwise available under the ADEA.

The *McKennon* Court, assuming the plaintiff's misconduct had it been known to her employer would have warranted her discharge, disagreed and reversed the lower courts.

It reasoned that since the employer was not aware of the misconduct at the time it terminated the plaintiff, it "could not have been motivated by knowledge it did not have and it

---

[1] Although *McKennon* was maintained under the "Age Discrimination in Employment Act" ["ADEA"] (29 U.S.C. 621 et.al.) while this case is brought under Title VII of the "Civil Rights Act of 1964" [Title VII] (42 U.S.C. 2000e et.al.), that is a distinction without difference. The *McKennon* Court noted that the ADEA shares with Title VII both common substantive features and a common purpose, to wit:  "The elimination of discrimination in the workplace" [p.358].

cannot now claim that the employee was fired for the non discriminatory reason" [p.359].  In other words the after discovered evidence of misconduct has no relevance to and cannot be used to justify the initial termination decision.

It did determine that the evidence of misconduct would be relevant to the remedies available to the plaintiff should it be found that the initiated termination decision was discriminatory.  In this respect a court could limit the backpay available to a plaintiff to the time period between the unlawful termination decision and the date the employer discovered the plaintiff's misconduct [p.362].

It concluded that an absolute bar of backpay in that situation would undermine the objectives of the employment discrimination statutes (p.362) [see also *Kristufek v. Hussman Food Service Co., Toastmaster Division*, 985 F.2d 364, 369 (7th Cir.1993); and *Stimeling v. Board of Education of Peoria Public School District*, 2010 U.S. Dis. Lexis 125418 (C.D. Ill. 2010)].

The facts in the present case are virtually identical to the *McKennon* situation.

First, when it terminated Davis in June of 2010 the District served upon her a statement of specific charges of misconduct.  Each charge related to Davis' practice while serving as the principal at Lindberg in administering its student activity fund.

Second, it was not until February of 2012, over 20 months after the District decided to terminate Davis that Davis, in exchange for the dismissal of 16 felony charges, pleaded guilty to the misdemeanor offense of intent to obstruct justice.  Because the plea was entered well after Davis' termination, none of the charges the District advanced against Davis at the time of her termination allege conduct on her part in obstructing justice.

Finally, after becoming aware of Davis' misdemeanor plea, the District in July of 2012 (like the *McKennon* employer) informed Davis that it was amending its charge and using her plea as an additional basis for her discharge.

Applying the *McKennon* principle to this case, Davis' plea has no relevance to the June, 2010 discharge decision. Since it had not occurred at that time and the District did not allege in its June 2010 charges conduct on Davis' part relating to any attempt to obstruct justice, the District cannot claim that its dismissal decision was based upon such conduct. Put another way, it cannot use such evidence to justify its termination decision. As such, it has no probative value to undermine Davis' claim that when she was discharged in June of 2010 she was treated differently and less favorably than similarly situated African American employees. Furthermore, the facts underlying the plea were neither known to the District nor a basis for the discharge decision.

The only relevance the plea has to this case turns upon the issue of remedies should it be found that the Board's actions in June of 2010 were unlawfully discriminatory. Assuming her plea would have been a legitimate reason to discharge Davis, it could be used to limit her remedies [*McKennon* at p.362]. Since Davis is not seeking backpay damages in this case after the date of her plea in February of 2012, it has no probative value to any issue in dispute in this case.

The only things which could reasonably result from evidence or statements of the plea being presented before the jury are: 1) the obvious unfair prejudice to Davis; 2) confusion concerning how the guilty plea relates to the June, 2010 decision; 3) misleading the jury into believing that in some respect the June, 2010 dismissal decision is justified based on evidence

that did not exist or the District was not aware of at that time (a result not permitted by *McKennon*); and 4) unnecessarily extending the length of the trial.

The District now claims that its actions in June of 2010 did not amount to her termination. The apparent basis for its contention rests with Davis' rights under the "School Code" to appeal the District's decision which extended the finality of the termination decision until the conclusion of the appeal process. In this case it was not concluded until the Appellate Court issued its mandate. The District is revising history. On June 7, 2010 the District's Board of Education adopted a resolution dismissing Davis. On June 8, 2010 it executed a "Notice of Charge and Dismissal" informing Davis "that you are dismissed" on the basis of six specific acts of misconduct. Thus, it is clear that the decision to terminate Davis was made in June of 2010.

If the decision did not become final until the administrative review proceeding was concluded, it was only because Davis exercised her right under the "School Code" to appeal the decision. The finality occurred not because of any decision on the part of the District, but instead resulted from a judicial determination. The decision which is in dispute in this case occurred by the District in June of 2010.

**B)  The Decisions Of The Hearing Officer, The Circuit Court And The Appellate Court.**

Just as Davis' guilty plea is irrelevant to disputes at issue in this case, so too are the decisions dealing with whether the District had good cause to terminate Davis. This is so because the District, prior to the good cause hearing, amended its charges to include Davis' guilty plea. Much of the administrative proceeding and the focal point of the judicial affirmation of Davis' dismissal turned upon her guilty plea.

While the Circuit Court was troubled about the charge relating to her purchase of a Mont Blanc pen, it was not that incident standing alone that caused it to reverse the hearing officer. Instead, it was that event "taken together" with the misdemeanor plea that was the reason for its decision [see p.4].

The Appellate Court's decision was based nearly entirely upon Davis' guilty plea. In sustaining the dismissal of Davis it concluded:

> "Therefore, we conclude the District properly determined Davis' actions were irremedial per se based on her pending criminal charges which eventually resulted in her guilty plea and corresponding criminal conviction for an offense involving dishonesty" [¶93].

In determining that Davis' conduct was sufficient cause for dismissal it reasoned that there was a sufficient nexus between the "criminal conduct Davis admitted" and her duties as a tenured teacher. It concluded that:

> "- - the conviction for the criminal offense of attempt to obstructing justice by Davis in 2009, while Davis was providing information about her conduct as a school principal, was sufficient to support the dismissal of Davis - - " [¶106 and 113].

Finally, the Appellate Court, although indicating the guilty plea was sufficient cause for Davis' dismissal, reasoned that it "could not be considered as an admission of her intent to commit theft against the District" [¶111].

If the District raises the decisions of the Circuit Court and the Appellate Court, it can only be for the purpose of supporting its contention that it had good cause to terminate Davis. Those decisions, particularly the Appellate Court's, rely upon her guilty plea.

If Davis' guilty plea is not relevant to its June, 2010 dismissal of Davis, neither are those decisions.

Finally, if those decisions have any purpose in this case, a proposition Davis disputes, their relevance would relate to questions of law (i.e., issue preclusion) which would be decided by the Court, not questions of fact for the jury. Thus, there would be no value in presenting or referring to them before a jury.

### C)  The Delay For The Dismissal Hearing.

The District may claim that because Davis' good cause hearing was postponed pending the resolution of the criminal case, her guilty plea and the administrative review decision, are somehow relevant to this case. *McKennon* teaches otherwise. No matter how long the delay or the reason for it, it does not alter the fact that the dismissal decision was made in June of 2010. At most, the guilty plea (like the situation in *McKennon*) was an independent reason the District had for terminating Davis. With the context of this case, its only value would be to limit her backpay damages to the date of that plea.

                                              MARY DAVIS

                                 By:  s/ James P. Baker
                                     Her Attorney

James P. Baker
Bar Number:  0097802
Baker, Baker & Krajewski, LLC
415 South Seventh Street
Springfield, Illinois  62701
Telephone:  (217) 522-3445
Facsimile:  (217) 522-8234
E-mail:  bms@bbklegal.com
(Pretrial/ davismary limine memorandum 011717)

## CERTIFICATE OF SERVICE

      I hereby certify that on January 23, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Stanley Eisenhammer
Babak Bakhtiari
Jason Manning
Hodges, Loizzi, Eisenhammer, Rodick & Kohn, LLP
401 SW Water Street, Suite 106
Peoria, Illinois 61602
Telephone: (309) 671-9000
Facsimile: (847) 670-7334
email: seisenhammer@hlerk.com
email: bbakhtiari@hlerk.com
email: jmanning@hlerk.com


          By: s/ James P. Baker
          Baker, Baker & Krajewski, LLC